Filed 11/13/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUSTAVO LOPEZ,<br><br>    Defendant and Appellant. | H046618<br>(Monterey County<br>  Super. Ct. No. SS111812A) |

Does suspending execution of sentence to place a defendant on mandatory supervision constitute a final judgment for purposes of retroactively applying an ameliorative statutory amendment? We conclude there is no final judgment in that situation because sentencing is not actually complete. In other words, a defendant who remains on mandatory supervision is not yet subject to a final judgment. As a result, defendant Gustavo Lopez is entitled to retroactive application of a statutory amendment that made transporting a controlled substance for personal use a misdemeanor. We will reverse the trial court's decision to the contrary.

## I. BACKGROUND

Defendant pleaded guilty in 2011 to transporting a controlled substance (Health & Saf. Code, § 11352, subd. (a)), a felony. According to the police report, he was driving with a bindle of approximately 0.2 grams of cocaine in his pocket. Defendant was granted probation, which he violated in 2014. Because of the violation, the trial court terminated probation and imposed an eight-month sentence (consecutive to the sentence in another case). Under Penal Code section 1170, subdivision (h)(5)(B), the court suspended execution of that sentence and placed defendant on mandatory supervision.

Defendant violated the terms of mandatory supervision in February 2016. The trial court increased the sentence to two years but again suspended execution to reinstate mandatory supervision for the entire term. Defendant then violated mandatory supervision (by testing positive for marijuana and not reporting to probation as directed) in October 2016. He failed to appear at the violation hearing, and a bench warrant issued.

Defendant was brought before the court on the bench warrant in 2018, at which time he moved to vacate his conviction. The basis for his request was that in 2013—two years after his 2011 guilty plea—the Legislature amended Health and Safety Code section 11352 to make transportation of a controlled substance a felony only where the transportation was for the purpose of sale (not for personal use, which defendant asserts are the circumstances of his offense). (Health & Saf. Code, § 11352, subd. (c), as amended by Stats. 2013, ch. 504, sec. 1, eff. Jan. 1, 2014.) The trial court denied defendant's request, finding the statutory amendment inapplicable because defendant's judgment was final.

The court then set a return date for sentencing. At that hearing in January 2019, the court stated, "You know, I'm changing my mind, Mr. Lopez. When I looked at this yesterday, I thought it was time to simply have you serve the remainder of your local prison time in custody. I'm going to give you one last chance." The court proceeded to modify defendant's sentence to 360 days in county jail (with 312 days custody credit), and ordered defendant placed on mandatory supervision for the remainder of the term. Defendant obtained a certificate of probable cause and timely appealed.

## II.  DISCUSSION

As amended in 2013, Health and Safety Code section 11352 now requires proof of an additional element for a conviction of transporting a controlled substance: that the substance was transported for purposes of sale. The amended statute would benefit defendant because he can be convicted only of a misdemeanor (under Health and Saf.

2

Code, § 11350, subd. (a), prohibiting simple possession of a controlled substance), unless the prosecution can prove he was transporting the cocaine he possessed in order to sell it.

Since defendant's conviction is based on conduct that occurred in 2011, well before the amendment's January 1, 2014 effective date, the amended statute applies here only if it can be applied retroactively. When a statute is amended to reduce the punishment for a criminal act, it is presumed that the Legislature intended the lighter penalty to apply retroactively "to every case to which it constitutionally could apply." (*In re Estrada* (1965) 63 Cal.2d 740, 745.) A statute can be constitutionally applied to acts committed before its passage so long as the judgment of conviction is not final. (*Ibid.*) A judgment becomes final when it has reached final disposition in the highest court authorized to review it. (*People v. Rossi* (1976) 18 Cal.3d 295, 304.)

Of course, before a judgment can be final there must be a judgment. In criminal actions, the terms "judgment" and "sentence" are synonymous. (*People v. McKenzie* (2020) 9 Cal.5th 40, 46.) There can be no judgment without a sentence. (*Ibid.*) We must therefore determine whether defendant had been "sentenced" before he was returned to court in 2018. The last action by the trial court before defendant asked for relief under the amended statute was to suspend execution of sentence and order defendant to serve a term on mandatory supervision under Penal Code section 1170, subdivision (h)(5). The question is whether that action resulted in defendant being sentenced.

A sentence, which consists of a fine, a term of imprisonment, or both, occurs when the court orally pronounces it on the record. (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) A grant of probation is not a sentence and final judgment for purposes of retroactivity: in a case where the court suspends imposition of sentence to place the defendant on probation, there is no final judgment. And where the court imposes sentence but suspends its execution, that sentence constitutes only a provisional or

3

conditional judgment, the finality of which depends on the outcome of the probationary period. (*People v. Chavez* (2018) 4 Cal.5th 771, 781.)

Here, the trial court imposed sentence and suspended its execution to place defendant on mandatory supervision. Mandatory supervision, a creature of the Criminal Justice Realignment Act of 2011 (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 15, § 1), is governed by Penal Code sections 1170, subdivision (h)(5) and 1203.3, subdivision (a). (Undesignated statutory references are to the Penal Code.) Section 1170, subdivision (h)(5)(A) directs that when imposing sentence in eligible cases, the trial court "shall suspend execution of a concluding portion of the term for a period selected at the court's discretion," the mandatory supervision period. At the same time—and significantly—section 1203.3, subdivision (a) expressly confers on the trial court the "authority at any time during the term of mandatory supervision ... to revoke, modify, or change the conditions of the court's order suspending the execution of the concluding portion of the supervised person's term." Although the statutory scheme uses the language "suspending execution of sentence," the court retains complete discretion to modify the previously imposed sentence. (*People v. Camp* (2015) 233 Cal.App.4th 461, 470.) The trial court in this case well understood the extent of its discretion, twice modifying defendant's sentence after mandatory supervision violations to achieve what the court viewed as a fair outcome under the circumstances. That flexibility is expressly contemplated in the statutes that created mandatory supervision. It is also inconsistent with the proposition that there was a final judgment, which could not be altered.

We see the trial court's preserved discretion as dispositive. Given the court's complete authority to "revoke, modify, or change" its previous sentence (see § 1203.3, subd. (a)), the sentencing process cannot fairly be described as finished when execution of a sentence is suspended to place a defendant on mandatory supervision. To the extent there is a judgment at that point, it is provisional or conditional in nature and therefore

4

does not prevent retroactive application of an ameliorative statute.  (See *People v. Conatser* (2020) 53 Cal.App.5th 1223, 1229.)

The court of appeal addressed a related issue in *People v. Martinez* (2020) 54 Cal.App.5th 885, 889.  There the defendant was entitled to retroactive application of an ameliorative statute on appeal from an order revoking mandatory supervision and executing a prison sentence.  Focusing on the issue of finality, the *Martinez* court reasoned that a judgment exists when mandatory supervision is revoked and a prison sentence executed, but the judgment becomes final only when appellate review of the revocation is complete.  (*Id*. at p. 893.)  In that case the same result obtained:  An ameliorative statute was applied retroactively when constitutionally permissible.

Legislative history reinforces our conclusion.  It reflects that the Legislature identified an injustice and sought to correct it by amending Health and Safety Code section 11352 to limit the felony offense to transportation for purposes of sale:  "AB 721 will correct the unwarranted interpretation that punishes an individual much more harshly if he/she is arrested walking down the street in possession of a small amount of illegal drugs than an individual who is arrested with the exact same quantity of drugs, but who is just sitting on a bench. [] AB 721 simply corrects the 'unjust' and 'absurd' result foreseen long ago by Justice Mosk [in his dissenting opinion in *People v. Rogers* (1971) 5 Cal.3d 129], and provides that similarly situated individuals should be treated similarly by the law."  (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on A.B. No. 721 (2013–2014 Reg. Sess.) June 19, 2013, p. 1.)  The legislative history supports our view that the Legislature " 'must have intended' [the] ameliorative changes to 'operate in' cases like this one."  (*People v. McKenzie*, *supra*, 9 Cal.5th 40, 51.)

Relying on *People v. Superior Court* (*Rodas*) (2017) 10 Cal.App.5th 1316, the Attorney General argues defendant is precluded from relief because the time limit for withdrawing his plea expired six months after the initial order granting probation in 2011.  (See § 1018.)  We reject that argument because defendant is not seeking to withdraw his

plea.  Rather, he asks that his conviction be vacated because his conduct no longer violates the relevant statute post-amendment.  This case is therefore distinguishable from *Rodas*, where the defendant did move to withdraw her plea, triggering application of the mandatory time limit for such a motion.   We note our disagreement with *Rodas* to the extent it suggests that the statute governing withdrawal of pleas can affect whether an amendment reducing punishment applies under *In re Estrada* (*supra*, 63 Cal.2d 740, 745).  Ameliorative amendments must be applied retroactively in every case where doing so is constitutionally permissible.  (*Ibid*.)  And constitutional permissibility depends on whether the judgment is final, not on statutory rules for withdrawing pleas.

Nor are we persuaded by the Attorney General's alternative position that a trial court's continuing discretion to modify mandatory supervision terms after suspending execution of sentence does not affect the existence of a judgment.  The ongoing ability to change a sentence is fundamentally inconsistent with the proposition that sentencing is complete, as it must be to create a final judgment.  This situation is analogous to a grant of probation which, as we have explained, is not a final judgment for retroactivity purposes.

The Attorney General also claims forfeiture, arguing that application of the amended statute is precluded because defendant could have, but did not, raise the issue on direct appeal from the first order placing him on mandatory supervision in 2014.  But application of the forfeiture rule is not automatic.  (*People v. McCollough* (2013) 56 Cal.4th 589, 593.)  Although the doctrine promotes judicial economy by prohibiting challenges not timely raised, competing considerations may prompt a reviewing court to refrain from concluding that a claim has been forfeited.  We find it appropriate to reach the merits of the issue here regardless of any previous failure to raise it.  As defendant

6

was punished under a statute the Legislature has since deemed unfair, that outcome should not stand if it can properly be avoided.

What remains is the disposition of this appeal. The appropriate resolution is to instruct the trial court to vacate defendant's conviction, but also to allow the District Attorney the option of trying defendant on the Health and Safety Code section 11352 charge. We reach this outcome because the amendment to the statute added an element the prosecution previously had no reason to prove: That the controlled substance was transported for purposes of sale. Fairness dictates that the prosecution be given the opportunity to establish the additional element on remand. (*People v. Eagle* (2016) 246 Cal.App.4th 275, 280.)

## III. DISPOSITION

The order denying defendant's motion to vacate his conviction for violating Health and Safety Code section 11352 is reversed. The case is remanded with instructions to enter a new order vacating defendant's conviction, and for further proceedings to allow the District Attorney the opportunity to prove the elements of a violation of the current version of Health and Safety Code section 11352.

_____
Grover, J.

**WE CONCUR:**

_____
Elia, Acting P. J.

_____
Danner, J.

**H046618 - _The People v. Lopez_**

| | |
|---|---|
| Trial Court: | Monterey County Superior Court, Case No.: SS111812A |
| Trial Judge: | Hon. Carrie McIntyre Panetta |
| Attorneys for Plaintiff/Respondent The People: | Xavier Becerra<br>  Attorney General of California<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Donna M. Provenzano<br>  Supervising Deputy Attorney General<br>Berit G. Fitzsimmons<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant Gustavo Lopez: | Lori A. Quick<br>  Staff Attorney<br>Sixth District Appellate Program |

**H046618 -** *The People v. Lopez*